# THE STATE v. EDWARD PARKER, Appellant.

### Division Two, November 24, 1914.

1. **ROBBERY: At Common Law.** At common law the elements of robbery were practically the same as under the statute, Sec. 4530, R. S. 1909; and therefore common-law adjudications on the subject aid in understanding the statute.

2. **————: One Offense: Two Methods.** The statute (Sec. 4530, R. S. 1909) denounces but one offense of robbery from the person, which, however, may be committed in two ways, namely: By the felonious taking of the property of another from his person (a) by violence or (b) by putting him in fear of some immediate injury to his person. And if there is neither violence nor putting in fear, the taking of $2.25 from another's pocket is not robbery in the first degree, but larceny.

3. **————: Fear: After Crime Has Been Committed.** Where the theft of $2.25 from another's pocket, accomplished by the accused placing his hand in his pocket and extracting the money therefrom while an accomplice engaged him in conversation, no blow being struck or threatened, no weapon being used or shown, no threat of injury, either immediate or remote, being uttered, and the only fear being that after the money was taken he became frightened, there is no "putting in fear" in the sense in which those words are used in the statute.

4. **————: Violence: Extracting Loose Coins.** Where the coins stolen were lying loose in another's pocket, and the thief, while an accomplice engaged him in conversation, inserted his hand in his pocket and extracted them, no force or violence being necessary to extract them and there being no knowledge that they were being extracted until the hand was felt in the pocket, there was no such violence as to constitute robbery in the first degree. The violence used in the robbery must precede or be contemporaneous with the taking of the property. [Distinguishing State v. Broderick, 59 Mo. 318.]

5. **ROBBERY: Convicted of Larceny.** Under an indictment for robbery the accused may, in a proper case, be convicted of larceny. And where the trial court should have sustained defendant's instruction in the nature of a demurrer to the evidence, since it fails to show he was guilty of robbery, yet as it does show that he was guilty of larceny, he will not, on his appeal, be discharged, but the judgment will be reversed, and the cause remanded for further procedure according to the law and the facts.

Appeal from Marion Circuit Court.—*Hon. David H. Harris*, Judge.

REVERSED AND REMANDED.

*Nelson & Bigger* and *Whitecotton & Wight* for appellant.

There is no substantial testimony to support the verdict. Therefore the court committed error in refusing to give the demurrer asked by the appellant at the close of the State's case. This was a special demurrer and went only to the sufficiency of the testimony to support the charge of robbery. The testimony of the prosecuting witness wholly fails to show that any property was taken by "violence," or "by putting the owner in fear." One or the other must be shown. Robbery in the first degree under our statute and decisions, involves an intentional putting in fear, or the use of violence by the defendant. State v. Sommers, 12 Mo. App. 375; State v. Smith, 119 Mo. 439; State v. Jenkins, 36 Mo. 372; State v. Howerton, 59 Mo. 91. It is of the very essence of robbery in the first degree, that the violence shall be present and immediate, and without it so being there is no case made. State v. Smith, 119 Mo. 439. It is not robbery to obtain property from another, without violence to the person by "artifice and tricking." Thomas v. State, 91 Ala. 34; Doyle v. State, 77 Ga. 513. It is not robbery to obtain property from another by the use of only sufficient force, to remove property from the pocket of the owner. Fanning v. State, 66 Ga. 167; Territory v. McKern, 3 Idaho, 15; State v. Sommers, 12 Mo. App. 374. The strongest case in Missouri, in support of the contention of the respondent that there is sufficient proof, in this case of the necessary force to make out a case against the defendant, is the case of State v. Broderick, 59 Mo. 345, and the facts in that

case are very much stronger as to the force used than the facts warrant in this case. The respondent seems to rely on this case, to sustain the conviction of the defendant and copies in its brief nearly all the opinion of the Broderick case, and then contends that the facts in the Broderick case are similar to the facts in this case. The respondent after concluding the quotation from that opinion comments as follows: "The defendant placed himself, unawares immediately to the side of the prosecuting witness, and snatched the money which was then and there attached to the clothes of the prosecuting witness, in such manner as to create a resistance." In what way was the money alleged to have been taken attached to the clothes of the prosecuting witness. This is a new construction of the meaning of the word attach, and one that cannot be followed by any fair minded person. There is no case reported in any of the reports of this State or any other state, that tends to support this contention of the respondent. The respondent is forced by the uncontroverted facts in this case to resort to this construction in order to have this conviction affirmed.

*John T. Barker,* Attorney-General, and *Ernest A. Green,* Assistant Attorney-General, for the State.

Under the seventh, twelfth and thirteenth grounds of the motion for a new trial, appellant complains that the trial court erred in refusing to give the demurrers to the evidence offered at the close of the State's case and at the close of all the evidence herein. There was no error whatever in overruling these two demurrers. The testimony in the case conclusively showed the defendant to be guilty, at least of petit larceny, and the only question in this case of any serious nature whatever is the question as to whether or not the testimony showed the defendant to be guilty of robbery in the first degree. That testimony showed that this

money was taken from the person of Herman Bock-hold by the defendant thrusting his hand in the pocket of the prosecuting witness and pulling the money there-from. The testimony of the prosecuting witness was to the effect that he suffered the money to be taken because of fear of an immediate injury being inflicted to his person by the defendant Parker and his accom-plice Settles. The only question in this case, there-fore, meriting consideration is whether or not the tes-timony of the prosecuting witness is a sufficient show-ing of violence or of putting in fear of an immediate injury to the person of the prosecuting witness. In this connection we call the court's attention to the cases of State v. Broderick, 59 Mo. 319, and State v. Wein-hardt, 253 Mo. 629. 34 Cyc. 1799; State v. Montgom-ery, 109 Mo. 645, 32 Am. St. 684; Colbey v. State, 46 Fla. 112, 110 Am. St. 87; Mahoney v. People, 3 Hun (N. Y.), 202; Comm. v. Davis, 23 Ky. L. Rep. 1717; People v. Klein, 113 Ill. 596; Smith v. State, 117 Ga. 320; People v. Campbell, 234 Ill. 391, 123 Am. St. 107; State v. McCune, 5 R. I. 60, 70 Am. Dec. 176; Evans v. State, 80 Ala. 4; Snyder v. Commonwealth, 21 Ky. L. Rep. 1538; Davis v. Comm., 21 Ky. L. Rep. 1295; State v. Nicholson, 124 N. C. 820; Comm. v. Titsworth, 30 Ky. L. Rep. 402; State v. Carr, 43 La. 418; Jones v. Comm., 112 Ky. 689, 23 Ky. L. Rep. 2081, 99 Am. St. 330, 57 L. R. A. 432; Stockton v. Comm., 125 Ky. 268, 30 Ky. L. Rep. 1302; State v. Sanders, 14 N. D. 203; Britt v. State, 7 Humphr. (Tenn.) 45; Coffelt v. State, 27 Tex. App. 608, 11 Am. St. Rep. 205. In view of the authorities hereinbefore cited, we insist that the trial court properly overruled the demurrers to the evidence offered by the defend-ant, and that under the testimony the defendant was justly and rightly convicted of robbery in the first degree.

FARIS, J.—Defendant, convicted in the circuit court of Marion county of robbery in the first degree, after the usual motions for a new trial and in arrest, appeals. The punishment assessed upon conviction was imprisonment in the penitentiary for a term of five years.

The facts developed upon the trial so far as they are pertinent to the matters it has become necessary for us to discuss in the opinion, were substantially as follows:

In the afternoon of the 15th of February, 1913, one Herman Buckhold, the man alleged to have been robbed, and who is the prosecuting witness herein, was in the city of Hannibal for the purpose of selling a load of corn and of cashing a check which he had received for a carload of hay. This check was for the sum of $120 and a few odd cents. The proceeds were paid to said Buckhold in cash, which consisted, odd cents excepted, of twelve ten dollars bills. Shortly after Buckhold obtained this money, defendant sold him a pair of eye glasses for the sum of one dollar. In the course of the sale of these eye glasses to Buckhold, and while paying defendant therefor, the money in the possession of Buckhold was seen by defendant. Some little time thereafter, on the same afternoon and about three o'clock, Buckhold left Hannibal and started upon his return to his residence, the same being some ten or eleven miles in a northwesterly direction from Hannibal. While Buckhold was in Hannibal and between the time of his arrival there, which was about noon, and the time of his departure therefrom, which was about three o'clock, he had drunk some four glasses of whiskey, all of which glasses he ingenuously admits were full ones. On leaving Haninbal he purchased a pint of whiskey, from which, however, prior to the events hereinafter detailed, he swears he did not drink.

State v. Parker.

Shortly after Buckhold left Hannibal the defendant Parker and one Henry Settle hired a horse and buggy and left Hannibal, ostensibly and as they stated to the liveryman, for the purpose of going to the Oakwood Fair Ground, the same being some two miles from Hannibal, but in a different direction from that taken by Buckhold in going home.

At about the hour of five o'clock defendant and said Settle caught up with Buckhold on the public road, at a point some seven miles distant from Hannibal and engaged in conversation with him with reference to the sort of land to be found in the neighborhood; leaving upon the mind of Buckhold, without (so far as the record discloses) saying so in direct or explicit language, the impression that they were land buyers. Buckhold stopped his wagon; the defendant and Settle drove in front of his team and stopped their buggy, leaving the buggy across the road in such wise as to obstruct the passage of Buckhold's wagon. After some other conversation as to the soil, the country and the scenery within view, defendant and Settle asked Buckhold to drink a bottle of beer with them. Buckhold at first demurred, but subsequently partially acquiesced; but upon defendant and Settle being unable, as they said, to find a bottle opener, Buckhold invited them to have a drink with him from the pint bottle of whiskey which he had theretofore purchased in Hannibal, and which he says had not up to that time been opened. Both defendant and Settle took a small drink of whiskey from Buckhold's bottle; thereafter defendant came up on one side of Buckhold's wagon and Settle upon the other. Settle engaged Buckhold in a conversation relative to changing a twenty dollar bill for him, and while Buckhold was engaged in this conversation with Settle and somewhat engrossed therein, and while he was leaning over toward Settle, who was on the left hand side of the wagon, the defendant climbed upon the front right wheel of the

wagon, placed his hand in Buckhold's righthand pantaloons pocket, and abstracted therefrom the sum of $2.25 in silver coin. Upon becoming aware of the actions of defendant, Buckhold struck with his whip at defendant and at his team. The team thereupon started very rapidly and defendant was thrown, or stepped, from the wheel.

Since the facts which transpired at the immediate moment of the alleged robbery are pertinent and decisive, and since Buckhold is the only witness who testifies touching them, we in fairness set out below from his testimony what he said and all he said as to the manner in which defendant committed the alleged robbery:

"Q. In your own way tell the jury just how it happened? A. You see, while I was talking to Mr. Settle Mr. Parker got up on the wheel unbeknown to me and got his hand in my pocket, and I never had any idea until I felt his hand in my pocket and felt the money jingle that he was upon the wheel at all. Well, I had the whip in my hand and I just gave him a punch and the team started moving and the wheel turned and Mr. Parker was off. *I guess I was scared. I didn't get scared until I got away.*"

On cross-examination, touching this same matter the prosecuting witness said:

"They brought the bottle back and one wanted me to change the money and the other ran his hand in my pocket. I was leaning over when I felt someone's hand in my pocket. While I was talking to Settle I felt what I thought was a man's hand in my pocket. My hair began to get 'curly' and *I got frightened after the horses started to run.* I didn't think there was anything wrong until he got his hand into my pocket, then I thought it was time for me to get away from him. That was the time when I noticed danger, when he got his hand in my pocket and took my money. That is all I can say. That is the time when I got scared and

dug out. I got scared right then. I didn't see him when he put his hand in my pocket.''

Many objections are raised by the defendant, but the above statement and the above excerpts from the testimony of the prosecuting witness illustrate the only one of the alleged errors urged upon us by defendant which we regard as pertinent. Mention of other matters complained of would do no good; such mention would be utterly useless either as an aid to the illumination of this case, or as an aid to the science of jurisprudence, and would but serve to obscure the one decisive point in the case which we discuss in the opinion. If other facts, however, illustrative of this point, shall become necessary, we will advert to them and set them out in the discussion of the legal phase involved.

## OPINION.

The chief contention made by the defendant is that the proof does not show that he is guilty of robbery in the first degree, with which crime he was charged in the information and of which he was Robbery in First Degree: Insufficient Proof. convicted. At the close of the State's case and again at the close of all of the evidence, defendant prayed the court to so instruct the jury, and the court refused to do so. We set out in the statement all of the testimony bearing upon this contention.

The crime of robbery in the first degree is defined by our statute thus:

''Sec. 4530. Every person who shall be convicted of feloniously taking the property of another from his person, or in his presence and against his will, by violence to his person or by putting him in fear of some immediate injury to his person . . . shall be adjudged guilty of robbery in the first degree.''

In passing, though not pertinent except as throwing light upon the cases which we cite which were ad-

judged at common law, we may say that at common law the elements of robbery were practically the same as under the statute above quoted. [State v. Lawler, 130 Mo. l. c. 371.]

Our statute denounces but one offense, which, however, may be committed, as to the phase here in question in the instant case, in two ways: by the felonious taking of the property of another from his person, (a) by violence, or (b) by putting him in fear of some immediate injury to his person. [State v. Smith, 119 Mo. l. c. 446.]

Manifestly no lengthy or involved argument is necessary to prove under the facts in the instant case, that Buckhold was not, at or prior to the taking of the silver coins from his pocket, put in fear by defendant, or by his accomplice Settle, of any immediate injury to his person. The fright of him who is robbed must be under the law an objective fright as contradistinguished from subjective fright; it must have been due, in short, to some act on the part of the accused, and not arise from the mere temperamental timidity of the person whose property happens to be stolen from his person or presence. [State v. Weinhardt, 253 Mo. 629.] Here defendant merely put his hand into the pocket of Buckhold while his accomplice Settle engaged him in conversation. The act of theft was wholly accomplished before Buckhold got frightened. No blow was struck or threatened; no weapon was used or shown, nor was any threat of injury, either immediate or remote, uttered by defendant. Robbery by putting in fear then clearly falls out of the case. In fact, learned counsel for the State do not urge this phase of robbery. The State does contend, however, that the force used by defendant in inserting his hand into the pocket of Buckhold and in drawing from such pocket the stolen silver coins was and constituted such violence under our statute as to make out robbery in the

262Mo12

first degreé. In this contention we cannot agree. Here the coins stolen were lying loose in Buckhold's pocket; no force or violence was necessary to separate them from Buckhold.

Our attention is called to the case of State v. Broderick, 59 Mo. 318; but in that case the watchchain of the prosecuting witness was larcenously taken by defendant Broderick by forcibly tearing it from the vest and from the watch, to both of which it was attached. When the prosecuting witness attempted to recover the chain the defendant struck him and ran. It is fairly clear from the reported case that the striking of the prosecuting witness by the defendant Broderick was after the breaking loose of the chain from the person and after the legal asportation of the chain was consummated. We are not aided at all then by this latter phase of force and violence, since force to prevent arrest, or to prevent recovery of the stolen property after the asportation of the property is complete and after detachment from the person of the owner of the property is consummated, are not necessary elements of robbery in the first degree. [Kelley's Crim. Law, 629; Thomas v. State, 91 Ala. 34; Routt v. State, 61 Ark. 594; People v. Stevens, 141 Cal. 488; Dawson v. Com., 74 S. W. (Ky.) 701.] In other words, the violence used in the robbery must precede, or be contemporaneous with the taking of the property. [34 Cyc. 1799.] The presence of force or violence of the latter sort, will not serve to make that act of larceny robbery, which without such belated act of force would have been but ordinary larceny. [Thomas v. State, supra; Kelley's Crim. Law, supra; 34 Cyc. and cases cited, supra.]

Our court held in the Broderick case, supra, that defendant therein was properly convicted of robbery. The distinction between the facts in that case and those in the instant case is obvious. In the Broderick case the chain was attached to the clothing of the pros-

ecutor and to a watch, inferably in a pocket of the latter's clothing. In order to remove this chain the thief had to use sufficient force to break it loose both from prosecutor's buttonhole and from his watch; here the coins stolen were merely stealthily lifted from Buckhold's pocket where they were lying unattached to his person. Such filching of loose property from the pocket with no more force than is necessary to lift and remove the property from the pocket is not robbery, but larceny. [Colbey v. State, 46 Fla. 112; Spencer v. State, 106 Ga. 692; Fanning v. State, 66 Ga. 167; Woodard v. State, 9 Tex. App. 412; Johnson v. Com., 24 Gratt. 555; Regina v. Walls, 2 Car. & Kir. 214; Secs. 4538, 4539, R. S. 1909.] The difference between robbery and theft from the person of another which our Legislature has formally and fully recognized by the enaction of said sections 4538 and 4539, Revised Statutes 1909 (amended, Laws 1911, pp. 193 and 194), lies in the force used or fear induced, or in the lack thereof. [People v. Campbell, 234 Ill. 391; Hall v. People, 171 Ill. 540; Rex v. Gray, 2 East P. C. 708; Rex v. Steward, 2 East P. C. 702; Rex v. McCawley, 1 Leach, 287; Rex v. Gnosil, 1 Car. & P. 304; People v. Church, 116 Cal. 300; Jackson v. State, 69 Ala. 240; Fanning v. State, supra; Shinn v. State, 64 Ind. 13; Com. v. Ordway, 12 Cush. 270.] Larceny committed by snatching or jerking the property of another person from such owner's person where such property is so attached to the person or clothing as to afford resistance, or where there is an antecedent or contemporaneous struggle over the taking of the property and asportation from the owner is accomplished by superior force, is robbery (State v. Moore, 106 Mo. 480; State v. Broderick, 59 Mo. 318; Rex v. Moore, 1 Leach, 335; Rex v. Lapier, 1 Leach, 320; Rex v. Mason, Russ. & Ry. 419; Usom v. State, 97 Ga. 194; Smith v. State, 117 Ga. 320; State v. McCune, 5 R. I. 60; Jackson v. State, 114 Ga. 826; State v. Donohue, 59 Atl. 12; People

v. Stevens, 141 Cal. 488; Colbey v. State, 46 Fla. 112; McDow v. State, 110 Ga. 293; Klein v. People, 113 Ill. 596; State v. Miller, 53 Kan. 324; Brown v. Com., 135 Ky. 635); but where the property is taken from the person by merely lifting it from the person or pocket, then it is larceny merely and the prosecution should be had under either section 4538 or section 4539, as amended, according as the property stolen may or may not exceed the value of thirty dollars. If the act of defendant in this case be robbery, then the Legislature did a vain and futile thing in enacting so much of sections 4538 and 4539, supra, as denounces thefts from the person.

It follows, that since upon the facts shown defendant was not guilty of robbery, the instruction prayed by defendant in the nature of a demurrer to the evidence should have been given.

This view renders a reversal of the case necessary. We shall not reverse the same and discharge the defendant, however, since it has been held that under an indictment for robbery the accused may properly in a proper case, be convicted of larceny. [State v. Brannon, 55 Mo. 63; 25 Cyc. 103 and cases cited; State v. Keeland, 90 Mo. 337.] Pursuant to the prayer in the appellant's brief we will reverse and remand the case for such action as the State may be upon the law and the facts advised to take. Other errors alleged we need not now notice, as they are such as will not necessarily happen again.

In passing, and in view of the attack made below upon the goodness of the information, but which attack seems to have been practically abandoned here by defendant, we may add that in our opinion the information is sufficient. [State v. Montgomery, 109 Mo. 645; State v. Calvert, 209 Mo. 280; State v. Kennedy, 154 Mo. 268.] It contains, it may be, words of surplusage added by learned counsel who drew it, out of the abundance of caution, but it is nevertheless good.

[State v. Flynn, 258 Mo. 211; Kelley's Crim. Law and Prac. 625.] Let the case be reversed and remanded. *Walker, P. J.*, and *Brown, J.*, concur.