STATE of Missouri, Respondent,

v.

Leroy ADAMS, Appellant.

No. 51964.

Supreme Court of Missouri, Division No. 1.

Oct. 10, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, James A. Pudlowski, Special Asst. Atty. Gen., St. Louis, for respondent.

J. Whitfield Moody, Sloan Richard Wilson, The Legal Aid and Defender Society, Kansas City, for appellant.

HOLMAN, Presiding Judge.

Defendant was charged with the offense of robbery in the first degree. See §§ 560.120 and 560.135 (all statutory references are to RSMo 1959, V.A.M.S.). The amended information also charged a prior felony conviction. The jury found defendant guilty as charged and the court fixed his punishment at imprisonment in the penitentiary for a term of five years. Defendant has appealed from the judgment.

The victim of the alleged robbery was one Wilbur Wilks. Wilks died shortly after the robbery. The transcript indicates that his death may have resulted from a heart attack rather than from blows struck by defendant.

Virginia Johnson testified that Wilks came to her home in Kansas City at about 7 a. m. on the morning of the robbery, and that defendant was also there and they were all drinking; that she had ordered some beer delivered to her home and defendant had seen the money in Wilks' billfold when Wilks paid for the beer; that between 9 and 10 a. m., they started to the drug store in Wilbur's car to get some cough syrup for her; that Wilbur was driving, she was in the back seat, and defendant was seated on the passenger side of the front seat; that after they had traveled about a half block defendant grabbed Wilbur and asked for his money; that Wilbur tried to turn off the ignition and opened the door of the car and tried to get out, but could not because defendant was holding him; that defendant stopped the car and started hitting Wilbur with his fist; that he took Wilbur's billfold from his hip pocket and took all of the

bills out of it. Mrs. Johnson further testified that she then jumped out of the car and ran back to her house; that defendant was not far behind her and had the money in his hand; that defendant told her he got $97 and he gave her $25 "to keep my mouth shut."

Defendant and Mrs. Johnson were seen leaving the car by Willard Thompson who lived nearby. Thompson testified that the car was parked in the middle of the street with the door open on the driver's side, and that there was a man seated in the front seat who appeared to be unconscious; that his wallet was lying on his lap. This witness called the police and later identified defendant and Mrs. Johnson as the persons he had seen leaving the car.

A patrolman who arrived at the scene at 9:48 a. m., found Wilks, apparently dead, seated behind the steering wheel with a billfold in his right hand.

Richard James, a police detective, testified that he interrogated the defendant at about 8:30 a. m. on the day following the robbery; that defendant told him that "he met Mr. Wilks at the home of Virginia Johnson at 3531 Wayne * * * at about 8 o'clock on the morning of the 19th and that they had drunk some beer together, and he wasn't sure about the time but he said that about an hour after that, which would be around 9:00 or after, he and Mr. Wilks and Virginia Johnson got in Mr. Wilks' car to go for a ride. He said that he asked Mr. Wilks to loan him five dollars, and when Mr. Wilks pulled out his billfold, while they were all in the car, he grabbed the billfold away from him and [that] Mr. Wilks tried to get the billfold back and they began to fight and that he hit him several times with his fist." This witness further testified that defendant said that he had taken about $90 from Mr. Wilks' billfold and had given Virginia Johnson $25 "to be quiet." Defendant offered no evidence.

■ The main contention of defendant on this appeal is that the trial court erred in failing to give an instruction on stealing from the person. No request was made for such an instruction but if there was substantial evidence to support the submission of that offense the court was required to give such an instruction whether requested or not. State v. Herron, Mo.Sup., 349 S.W.2d 936; § 546.070(4).

There is no question but that the testimony of Virginia Johnson was sufficient to make a submissible case of robbery in the first degree. However, defendant says that the testimony of Detective James, in which he related the statment made by defendant, would have supported a submission of the offense of stealing; that if the jury believed that the offense occurred in the manner defendant said it did he could have been found guilty only of stealing because there was no "violence" to the person of Wilks or "putting him in fear" prior to or contemporaneous with the taking.

■■ It is elementary that in order to constitute robbery in the first degree the property must be taken from the person robbed by violence to his person or by putting him in fear. It is well settled that the violence or fear must precede or be contemporaneous with the taking of the property, and the subsequent use of force or intimidation to prevent the retaking of the property by the victim will not convert the act of stealing into the offense of robbery. State v. Parker, 262 Mo. 169, 170 S.W. 1121, L.R.A. 1915C, 121. There is nothing in defendant's version of the occurrence to indicate that the snatching of the billfold was accomplished by putting Wilks in fear. Therefore, the serious question for us to determine is whether the act of defendant in taking the billfold from Wilks' hand constituted sufficient force or violence to warrant a conviction of robbery or whether that act merely constituted the offense of stealing.

"The rule prevailing in most jurisdictions is that the mere snatching or sudden taking of property from the person of another does not in itself involve such force, violence, or putting in fear as will constitute robbery * * *. The authorities are agreed that a sudden taking or snatching may be accompanied by sufficient force to constitute robbery. Thus, if a struggle immediately ensues to keep possession of the property and the thief overcomes the resistance, or the article snatched is so attached to the owner's person as to afford resistance or injure the possessor in the taking, the violence is sufficient to constitute the act a robbery." 46 Am.Jur., Robbery, § 21, p. 149.

■ In State v. Thompson, Mo.Sup., 238 S.W. 115, it was held that a submissible case of robbery was made where there was testimony that defendant grabbed a bag containing money which was held by a woman and that she tried to hold onto it but he wrenched the bag from her arm by force. Also, in State v. Broderick, 59 Mo. 318, there was held to be sufficient violence to support a conviction of robbery where defendant grabbed the watch chain of the victim with such violence as to break the chain and straighten out the hook which fastened it into a buttonhole. On the other hand, it is uniformly held that "taking valuables from another's pocket surreptitiously or without using force or putting in fear is merely larceny, not robbery. This distinction was clearly explained by this court in the case of State v. Parker, 262 Mo. 169, 1. c. 178, 170 S.W. 1121, L.R.A. 1915C, 121." State v. Spivey, Mo.Sup., 204 S.W. 259, 261. In an early court of appeals case it was said that "it seems to be now held that sudden snatching of property from a person is not robbery, if there is no struggle and no injury done to the person robbed." State v. Sommers, 12 Mo.App. 374, 376. In the case of Routt v. State, 61 Ark. 594, 34 S.W. 262, defendant asked one Holt for a loan of $10. When Holt took some bills from his pocket defendant snatched a $100 bill from his hand.

A confederate took the bill and used a gun in making his escape. In holding that the facts did not constitute robbery the court stated: "It is well established that the snatching of money or goods from the hand of another is not robbery, unless some injury is done to the person, or there be some previous struggle for the possession of the property, or some force used in order to obtain it." 34 S.W. 263. A rather exhaustive review of the "purse snatching" cases is contained in the opinion in State v. White, 326 Mo. 1000, 34 S.W. 2d 79. In that case it was held that there was no submissible case of robbery in the first degree where the defendant snatched a purse from a young lady walking along the sidewalk.

■ We conclude from a consideration of the authorities cited that snatching a valuable article from another is robbery where force is exercised in overcoming the resistance of the person robbed or in detaching the article taken where it is fastened to the clothing or person of the victim, but that where the article is merely snatched from the hand of another the offense is stealing and not robbery.

■ In the case at bar it appears from the statement given by defendant to the officer that Wilks had no reason to expect the billfold to be snatched from his hands and hence offered no resistance and that defendant used a minimum amount of force in obtaining possession of the billfold. We have therefore concluded that such facts would support a submission of the offense of stealing. See §§ 560.156 and 560.161. We accordingly rule that the trial court erred in failing to give an instruction submitting the offense of stealing in addition to the instruction submitting the more serious offense of robbery in the first degree.

Other points briefed will not likely recur upon another trial and therefore need not be ruled.

The judgment is reversed and the cause remanded for a new trial.

HENLEY, J., concurs.

HYDE, J., dissents in separate opinion filed.

HYDE, Judge (dissenting).

I respectfully dissent from the opinion of Holman, P. J., herein. I consider this to be a case of robbery by violence under Sec. 560.120 RSMo, V.A.M.S.

The opinion recognizes, as quoted from 46 Am.Jur. 149, Robbery, Sec. 21: "The authorities are agreed that a sudden taking or snatching may be accompanied by sufficient force to constitute robbery. Thus, if a struggle immediately ensues to keep possession of the property and the thief overcomes the resistance, or the article snatched is so attached to the owner's person as to afford resistance or injure the possessor in the taking, the violence is sufficient to constitute the act a robbery."

An immediately ensuing struggle to keep possession is exactly what happened in this case according to the statement of defendant relied on by the opinion as the basis for its holding that the taking was not by violence, namely: "He said that he asked Mr. Wilks to loan him five dollars, and when Mr. Wilks pulled out his billfold, while they were all in the car, he grabbed the billfold away from him and [that] Mr. Wilks tried to get the billfold back and they began to fight and that he hit him several times with his fist."

All of this occurred in Wilks' car with defendant in the front seat with Wilks. Defendant was not able to get out of the car with Wilks' billfold, or even to get away from Wilks on the seat, until he had struck him several times with his fist so violently that Wilks died shortly afterward. Although Wilks' death may have been due to a heart attack, this condition resulted from the violence used even though the blows would not have caused the death of one with a normal heart. This is far different from a snatch-and-run case like State v. White, 326 Mo. 1000, 34 S.W.2d

79. Here the snatching alone was not enough to enable defendant to get away with Wilks' billfold and he had to use great violence to do so. I would affirm the judgment.